FILED
CLERK
1/23/2025 10:51 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,    : 20-cr-00251-JMA-SIL-7
                             :
                             :
    - versus -               : U.S. Courthouse
                             : Central Islip, New York
DAVID SOSA-GUEVARA,          :
                             : January 16, 2025
            Defendant        : 12:27 p.m.
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE LEE G. DUNST
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

**For the Government**:        **Breon S. Peace, Esq.**
                              United States Attorney

                        BY:  **Paul Scotti, Esq.**
                              United States Attorneys Office
                              Long Island Courthouse
                              610 Federal Plaza
                              Central Islip, NY 11722


**For the Defendant**:         **Xavier R. Donaldson, Esq.**
                              136 Madison Avenue, 6th Floor
                              New York, NY 10016

                              **John Holdridge, Esq.**
                              PO Box 844
                              Athens, GA 30601



**Transcription Service**:     **Transcriptions Plus II, Inc.**
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

 1          THE DEPUTY:  Calling case 20-cr-251, *U.S. v.*
 2  *Sosa-Guevara.*
 3          Counsel, please state your appearance for the
 4  record.
 5          MR. SCOTTI:  Good afternoon, your Honor.  Paul
 6  Scotti for the United States.
 7          THE COURT:  Good afternoon, Mr. Scotti.
 8          MR. DONALDSON:  Your Honor, good afternoon.
 9  Xavier R. Donaldson for Mr. David Sosa-Guevara.  Good
10  afternoon.  Mr. Scotti, good afternoon.
11          MR. HOLDRIDGE:  John Holdridge also with Mr.
12  Sosa-Guevara.
13          THE COURT:  All right.  Good afternoon,
14  gentlemen.  Good afternoon, Mr. Sosa-Guevara.
15          THE DEFENDANT:  Good afternoon.
16          THE COURT:  If you could just make sure to put
17  a microphone, just move that closer to him.  Okay.  Thank
18  you.
19          All right.  So Ms. Tirado, could you please
20  swear the interpreter?
21      (Guadalupe Alvarez, Spanish interpreter, sworn)
22          THE DEPUTY:  Please state your name for the
23  record.
24          THE INTERPRETER:  Guadalupe Alvarez, Spanish
25  interpreter for the court.

3

Proceedings

1    THE DEPUTY:  Thank you.

2    THE INTERPRETER:  Thank you.

3    THE COURT:  All right.  Good afternoon.

4    THE INTERPRETER:  Good afternoon.

5    THE COURT:  So Mr. Sosa-Guevara, I'm advised by

6    your counsel that you wish to plead guilty to some of the

7    charges in the indictment.

8        This is a serious decision and I want to make

9    sure that you understand all of your rights and the

10   consequences of the plea.  So I'm going to be asking you

11   some questions and this is going to require that your

12   answers be made under oath, so I'm going to ask my court

13   reporter to please swear you in.

14   THE DEPUTY:  Please stand and raise your right

15   hand.

16   D A V I D   S O S A - G U E V A R A,

17       called as a witness, having been first duly sworn,

18       was examined and testified as follows:

19   THE DEPUTY:  Thank you.  Please be seated.

20   THE COURT:  All right.  So I want you to

21   understand that now that you've been sworn your answers

22   to my questions will be subject to the penalties of

23   perjury or making a false statement if you do not answer

24   truthfully.  So that means that if you answer falsely to

25   any of my questions, the government could prosecute you

4

Proceedings

1    for perjury or making a false statement and may use any

2    of those false statements today during that proceeding.

3    Do you understand?

4                THE DEFENDANT:  Yes, I do.

5                THE COURT:  All right.  Now, Mr. Sosa-Guevara,

6    I want you to understand that this case is assigned to

7    District Court Judge Joan Azrack. She's the judge who's

8    going to sentence you and she's the judge who's going to

9    make the ultimate decision as to whether or not to accept

10   your guilty plea.

11               If you wish, you have the absolute right to

12   plead guilty before her and there'll be no prejudice to

13   you.  But if you choose, I will listen to your plea

14   today.  A transcript will be made.  This is being

15   recorded electronically.  And Judge Azrack will review

16   the transcript in connection with your sentence.  Do you

17   understand?

18               THE DEFENDANT:  Yes, I do.

19               THE COURT:  All right.  Do you wish to give up

20   your right to have Judge Azrack hear your plea and

21   instead proceed before me?

22               THE DEFENDANT:  Yes, I am in agreement.

23               THE COURT:  All right.  Do you make that

24   decision voluntarily and of your own free will?

25               THE DEFENDANT:  Yes.

5

Proceedings

1          THE COURT:  Has anyone threatened you or made

2    any promises to you to induce you to plead before me

3    today?

4          THE DEFENDANT:  No.

5          THE COURT:  All right.  Based upon what's been

6    stated by Mr. Sosa-Guevara as well as the fact that I've

7    got an executed order of referral signed by him, his

8    counsel, and the Assistant United States Attorney, I'm

9    going to accept the order of referral and sign it and

10   proceed with the plea today.

11         Mr. Sosa-Guevara, before I accept your plea

12   there are a number of questions I need to ask you to

13   assure myself that your plea is valid.  If you don't

14   understand any of my questions, please say so and I'll

15   repeat myself.

16         How old are you?

17         THE DEFENDANT:  33.

18         THE COURT:  And how much education have you

19   had?

20         THE DEFENDANT:  Up until ninth grade of high

21   school.  Ninth grade of high school.

22         THE COURT:  All right.  Thank you.  And I know

23   we're using the assistance of an interpreter today, but

24   are you able to speak or understand any English?

25         THE DEFENDANT:  My English is limited.

6

Proceedings

1          THE COURT:  Okay.

2          MR. SCOTTI:  Your -- I'm sorry, your Honor.

3          THE COURT:  Go ahead, Mr. Scotti.

4          MR. SCOTTI:  I don't mean to interrupt.  I

5   apologize because I was getting my paperwork together in

6   the beginning, but was interpreter sworn?

7          THE COURT:  Yes.

8          MR. SCOTTI:  And again, sorry to interrupt.

9          THE COURT:  It's no worry.  She was sworn at

10   the beginning.

11          MR. SCOTTI:  Thank you, Judge.

12          THE COURT:  Okay.  Mr. Sosa-Guevara, are you

13   under the care of a doctor for any reason right now?

14          THE DEFENDANT:  What do you mean?  Like what

15   kind?

16          THE COURT:  Well, is any doctor treating you

17   right now in the facility --

18          THE DEFENDANT:  No.

19          THE COURT:  -- where you're being held?

20          THE DEFENDANT:  No, no.

21          THE COURT:  All right.  In the past 24 hours,

22   have you taken any medicine or anything else that's

23   impacting your ability to understand what's happening

24   today?

25          THE DEFENDANT:  No, I have not taken anything.

7

Proceedings

1  No, I have not taken anything.

2          THE COURT:  All right.  And have you ever been

3  hospitalized or treated for drug addiction, alcoholism,

4  or any other mental or emotional problems?

5          THE DEFENDANT:  No.

6          THE COURT:  Is your mind clear today?

7          THE DEFENDANT:  Yes, it is.

8          THE COURT:  All right.  Do you understand

9  what's happening?

10          THE DEFENDANT:  Yes, I do understand.

11          THE COURT:  All right.  Thank you.  So Mr.

12  Sosa-Guevara, as a defendant in a criminal case, you have

13  the right to be represented by an attorney at every stage

14  of your criminal case from when you were first arrested

15  through today, through trial, and through appeal.  And if

16  you cannot afford an attorney, an attorney will be

17  appointed to represent you.  Do you understand?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  All right.  And are Mr. Donaldson

20  and Mr. Holdridge, who are sitting next to you, your

21  attorneys?

22          THE DEFENDANT:  Yes, they are my attorneys.

23          THE COURT:  All right.  And if at any time

24  during our proceeding today you want to talk to them

25  about anything, just tell me and I'll give you an

8

Proceedings

1   opportunity to speak to them.  Do you understand?

2          THE DEFENDANT:  Yes, I'm in agreement.  Thank

3   you.

4          THE COURT:  Have you had any problem

5   communicating with your attorneys either directly or

6   through an interpreter?

7          THE DEFENDANT:  None.

8          THE COURT:  Have you had enough time to talk to

9   them about your decision to enter a guilty plea in this

10  case?

11         THE DEFENDANT:  Yes, we have been speaking so

12  much about it already.  Thank you.

13         THE COURT:  All right.  And are you fully

14  satisfied with the representation and advice that they

15  provided you?

16         THE DEFENDANT:  Yes, I am.

17         THE COURT:  All right.  I'll direct it to Mr.

18  Donaldson in the first instance.  You tell me who to

19  direct the questions to.  Counsel, have you discussed

20  this matter with your client?

21         MR. DONALDSON:  Yes, we have.

22         THE COURT:  All right.  Have you had any

23  difficulty communicating with him either directly or

24  through an interpreter?

25         MR. DONALDSON:  No, we have not.

9

Proceedings

1      THE COURT:  All right.  And have you been

2  communicating with an interpreter or just in English?

3      MR. DONALDSON:  With an interpreter and in

4  English but mostly with an interpreter regarding these

5  plea negotiations.

6      THE COURT:  All right.  Thank you.  Are you

7  satisfied that Mr. Sosa-Guevara understands the rights

8  that he'd be waiving by pleading guilty today?

9      MR. DONALDSON:  Yes.

10      THE COURT:  All right.  And is he capable of

11  understanding the nature of these proceedings?

12      MR. DONALDSON:  Yes.

13      THE COURT:  Do you have any doubt at all about

14  his competence to plead at this time?

15      MR. DONALDSON:  No, I do not.

16      THE COURT:  And have you advised him of the

17  maximum and minimum sentence and fine that can be

18  imposed?

19      MR. DONALDSON:  Yes.

20      THE COURT:  And have you discussed with him the

21  operation of the sentencing guidelines and how those

22  guidelines affect his case?

23      MR. DONALDSON:  Yes.

24      THE COURT:  All right.  And I know there are a

25  lot of additional very specific provisions in the plea

10

Proceedings

1    agreement which we'll go over in a few minutes and I'll

2    ensure that you have had an opportunity to discuss all

3    those with your client, and I'll review that all with him

4    in a few minutes.

5            All right.  So it's my understanding that Mr.

6    Sosa-Guevara is prepared today to enter a plea of guilty

7    to Count 1 of the indictment which charges racketeering,

8    and he's going to admit to his participation in several

9    predicate racketeering acts that are cited in the

10   indictment as well as admit his participation in several

11   uncharged racketeering acts.

12           Mr. Sosa-Guevara, in order for the government

13   to convict you of that charge, they would have to prove

14   several elements beyond a reasonable doubt.

15           Mr. Scotti, why don't I ask you to please

16   explain the charge and the specific proof from the

17   government's perspective?

18           MR. SCOTTI:  Yes, your Honor.  With respect to

19   Count 1 to which the defendant is pleading guilty, the

20   eighth superseding indictment which charges the defendant

21   with racketeering in violation of Title 18 United States

22   code Sections 1962(c) and 1963, the government must prove

23   each of the following elements beyond a reasonable doubt.

24           That an enterprise existed, here the

25   transnational criminal organization of La Mara

11

                    Proceedings

1   Salvatrucha, or the MS-13, and that it was engaged in or

2   the activities of the enterprise had an effect upon

3   interstate and foreign commerce.

4           That the defendant was a knowing member of the

5   enterprise.

6           That the defendant intentionally performed

7   acts, functions, or duties which were necessary to or

8   helpful in the operation of the enterprise.

9           And that the defendant conducted or

10  participated unlawfully, intentionally, and knowingly in

11  the conduct or affairs of the enterprise through a

12  pattern of racketeering activity by committing at least

13  two specific acts related to the affairs of the MS-13

14  enterprise.

15          First starting with the racketeering acts in

16  the indictment 2B and 8B, these racketeering acts charge

17  the defendant with murder in violation of New York Penal

18  Law Sections 125.25 Subsection 1, which is murder in the

19  second degree, and Section 20, which is acting in

20  concert.

21          The government would have to prove each of the

22  following elements beyond a reasonable doubt.

23          That on or about the respective dates set forth

24  in the superseding indictment within the Eastern District

25  of New York the defendant personally or by acting in

12

Proceedings

1  concert with another person caused the death of each of

2  the named victims indicated in the superseding

3  indictment.  And that the defendant did so with the

4  intent to cause their deaths.

5           As to racketeering act 9, kidnapping conspiracy

6  in the second degree, charged with the kidnapping

7  conspiracy in the second degree and that's in violation,

8  your Honor, of New York Penal Law Sections 135.20, which

9  is kidnapping in the second degree, and 105.15, which is

10  conspiracy in the second degree, as well as Section 20,

11  acting in concert.

12           The government would have to prove that in or

13  about August 2017 within the Eastern District of New York

14  the defendant, with the intent that conduct constituting

15  kidnapping in the second degree be performed, he agreed

16  with one or more persons to engage in or cause the

17  performance of such conduct.

18           And a person is guilty of kidnapping in the

19  second degree when he or she abducts another person.

20  Abducts means to restrain a person with intent to prevent

21  that person's liberation either by secreting or holding

22  him or her in a place where he or she is not likely to be

23  found, or by using or threatening to use deadly physical

24  force.

25           With respect to racketeering act 10, this

13

Proceedings

1  racketeering act charges the defendant with conspiracy to

2  distribute marijuana in violation of 21 USC Section

3  841(b)(1)(D) and Section 846.

4          The government would have to prove that two or

5  more persons agreed to distribute or possess with intent

6  to distribute one or more controlled substances,

7  specifically marijuana, which is a Schedule 1 controlled

8  substance.  That the defendant was a party to or member

9  of that agreement.  And that the defendant joined the

10  agreement or conspiracy knowing of its objective, that is

11  to distribute and possess with intent to distribute

12  marijuana, and knowingly intended to join together with

13  at least one other alleged conspirator to achieve that

14  objective.

15          Those are the elements of racketeering with

16  respect to the charged offenses in the superseding

17  indictment, your Honor.

18          THE COURT:  All right.  Thank you, Mr. Scotti.

19          Mr. Donaldson, is that an accurate summary of

20  the charges and the elements?

21          MR. DONALDSON:  Yes, it is.

22          THE COURT:  All right.

23          Mr. Sosa-Guevara, have you carefully read the

24  indictment including the introduction as well as the

25  substantive counts?

14

Proceedings

1          THE DEFENDANT:  Yes, I did.

2          THE COURT:  All right.  And have you spoken to

3   your attorneys and gone over what the government would

4   have to prove and what proof beyond a reasonable doubt

5   means with respect to these charges?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  So sir, what I want to

8   do now is go over the rights that you have and the rights

9   that you would be giving up if you choose to plead guilty

10  today.

11         First of all, you have the right to plead not

12  guilty.  So what that means is that even if you are

13  guilty, you have a choice.  It's up to you to decide what

14  to do, not your lawyer, not anyone else.  You can

15  withdraw your previously entered plea of not guilty and

16  plead guilty as you apparently wish to do today.  Or you

17  can choose to go to trial by simply continuing in your

18  plea of not guilty.  Do you understand?

19         THE DEFENDANT:  Yes, I do.

20         THE COURT:  So if you plead not guilty to the

21  charges, you have the right under the constitution to a

22  speedy and public trial before a jury with the assistance

23  of your attorney on the charges contained in the

24  indictment.  At any trial, you'd be presumed innocent.

25  You don't have to prove that you're innocent.  Under our

Proceedings

1   legal system it is the government that has the burden to

2   prove beyond a reasonable doubt that you're guilty of the

3   crimes charged.  If at any trial the government would

4   fail to meet that burden of proof, the jury would have to

5   find you not guilty.  Do you understand?

6          THE DEFENDANT:  Yes.

7          THE COURT:  So that's why sometimes in cases

8   juries return verdicts of not guilty even though the

9   jurors believe the defendant on trial probably committed

10  the crime charged.  When a jury returns a not guilty

11  verdict, the jurors are not necessarily saying they

12  believe the defendant is innocent.  They're merely saying

13  that they're not convinced beyond a reasonable doubt that

14  a defendant is guilty.  Do you understand the difference?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Now, if there was a trial in this

17  case, witnesses for the government would have to come

18  into court and testify in your presence.  Your lawyer

19  would have the right to cross-examine each witness, to

20  object to evidence offered by the government, and could

21  offer evidence on your own behalf.  Your lawyers would

22  also have the right to subpoena or compel witnesses to

23  come to court to testify.  Do you understand?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Now, if there was a trial in this

16

Proceedings

1    case, you also would have the right to testify on your

2    own behalf if you chose to do so.  On the other hand, you

3    can't be forced to testify if you don't want to.  Under

4    the constitution, no person can be forced to be a witness

5    against himself.  And if you had a trial and you chose

6    not to testify, Judge Azrack would specifically instruct

7    the jury that they can't hold that against you.  Do you

8    understand?

9             THE DEFENDANT:  Yes, I do.

10            THE COURT:  So if instead of going to trial you

11   choose to plead guilty to the crimes charged and if Judge

12   Azrack accepts your guilty plea, you're going to be

13   giving up your constitutional right to a trial and all

14   the other rights that I just discussed.  There'll be no

15   trial in the case and the Court will simply enter a

16   judgment of guilty based upon your plea.  Do you

17   understand?

18            THE INTERPRETER:  I'm sorry.  The interpreter.

19   The last part, please?

20            THE COURT:  I'm sorry.  I'm sorry.

21            THE INTERPRETER:  Just the last --

22            THE COURT:  My apologies for going too fast.

23   I'll just repeat it.  If instead of going to trial you

24   plead guilty to the crimes charged and Judge Azrack

25   accepts your guilty plea, you'll be giving up your

17

Proceedings

1    constitutional right to a trial and all the other rights

2    I just discussed.  There'll be no trial in this case.

3    The Court will simply enter a judgment of guilty based

4    upon your plea.  Do you understand?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  Also, if you do plead guilty today,

7    I'll be asking you questions about what you did in order

8    to satisfy myself and Judge Azrack that you are guilty of

9    the crimes charged.  You're going to have to answer my

10   questions and acknowledge your guilt.  So what that means

11   is you're going to be giving up your right not to testify

12   against yourself.  Do you understand?

13             THE DEFENDANT:  Yes, I do.

14             THE COURT:  Okay.  Also, if you enter a plea of

15   guilty today and you admit the criminal conduct alleged

16   in the indictment and Judge Azrack accepts your plea, you

17   can't appeal to a higher court on whether or not you

18   committed the crime.  That's over as a result of your

19   plea.  Do you understand?

20             THE DEFENDANT:  Yes, I do.

21             THE COURT:  All right.  Are you willing to give

22   up your right to trial and the other rights I just

23   discussed?

24             THE DEFENDANT:  Yes.

25             THE COURT:  All right.  I have before me the

18

Proceedings

1    plea agreement in this case which is signed and dated

2    today on page 9.  I'll also note that on page 7 there's a

3    handwritten entry in paragraph 6 regarding the date of

4    the plea statements supporting judicial removal

5    proceedings which is dated January 16, 2025 and that's

6    initialed by all of the parties.

7              Mr. Sosa-Guevara, did you have an opportunity

8    to read the plea agreement?

9              THE DEFENDANT:  If I had the opportunity of

10   what?

11             THE COURT:  Did you read the plea agreement?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  Did you read it in

14   English or in Spanish?

15             THE DEFENDANT:  In Spanish.

16             THE COURT:  All right.  And did you discuss it

17   with your attorneys?

18             THE DEFENDANT:  Yes, we did.

19             THE COURT:  All right.  Do you believe that you

20   understand this agreement?

21             THE DEFENDANT:  Yes.

22             THE COURT:  All right.  Mr. Scotti, can you

23   represent that the plea agreement before me represents

24   the entire understanding that the United States

25   Attorney's Office has reached with this defendant?

19

Proceedings

1    MR. SCOTTI:  Yes, your Honor, that's correct.

2    THE COURT:  All right.  Mr. Donaldson, have you

3  read and reviewed the plea agreement with your client?

4    MR. DONALDSON:  Yes.

5    THE COURT:  All right.  And based upon what he

6  indicated, it sounds like this was with the assistance of

7  a translation?

8    MR. DONALDSON:  That's correct.

9    THE COURT:  All right.  So you provided him

10  with a translated copy of the plea agreement and that's

11  what was reviewed with him?

12    MR. DONALDSON:  Yes, your Honor.

13    THE COURT:  All right.  And in your discussions

14  with him about the substance of the plea agreement, that

15  was with the use of a Spanish interpreter?

16    MR. DONALDSON:  Yes.

17    THE COURT:  All right.  And does the plea

18  agreement contain the entire agreement that your client

19  has entered into with the government?

20    MR. DONALDSON:  Yes.

21    THE COURT:  All right.  So Mr. Sosa-Guevara,

22  I'm going to be reviewing several provisions in the

23  agreement in a minute, but is there anything that's not

24  clear to you or anything in particular that you want me

25  to explain in any further detail to you?

20

Proceedings

1          THE DEFENDANT:  No, everything is fine.

2          THE COURT:  All right.  And other than the

3    promises that are contained in the written agreement, has

4    anyone made any other promises that have caused you to

5    plead guilty today?

6          THE DEFENDANT:  No, none.

7          THE COURT:  Okay.  So what I want to do first

8    is review with you -- oh, sorry.

9          THE INTERPRETER:  It's not working.

10          THE COURT:  Okay.  Let's --

11          THE INTERPRETER:  Okay.

12          THE COURT:  All right.  So I note, Mr.

13    Sosa-Guevara, you just indicated that there was a problem

14    hearing the interpreter.  Is that the first time in the

15    proceeding today that you've had any problem hearing the

16    interpreter?

17          THE DEFENDANT:  Yes.  But it's working now.

18          THE COURT:  Okay.  And if at any point in time

19    as the proceeding continues, as you just did, if you have

20    any problem hearing the interpreter, please interrupt and

21    we'll repeat everything.  Do you understand?

22          THE DEFENDANT:  Okay.  Thank you very much.

23          THE COURT:  All right.  Is there anything that

24    I've said so far during this proceeding where you had any

25    difficulty hearing the interpreter that you want me to

21

Proceedings

1    repeat?

2              THE DEFENDANT:  No.  Only the time that I said

3    it.  Everything is fine now.

4              THE COURT:  All right.  Thank you.  All right.

5              So let me next review with you what the

6    penalties are for the crimes that you're intending to

7    plead guilty to today.  You're intending to plead guilty

8    to Count 1 of the indictment which charges racketeering.

9    That has a maximum term of imprisonment of life and a

10   minimum term of imprisonment of no time in jail.  The

11   maximum term of supervised release that can be imposed

12   following the completion of your term of imprisonment is

13   five years.  And if any condition of that release is

14   violated, you may be sentenced for up to another five

15   years without credit for your pre-release imprisonment or

16   any time previously served on post release supervision.

17             The maximum fine is $250,000 or twice the gross

18   gain or twice the gross loss.  You also face mandatory

19   restitution in the full amount of each victim's losses as

20   determined by the Court.  You're required to pay a

21   mandatory $100 special assessment.  And you also face

22   removal from the United States as a result of the

23   ultimate sentencing in this case.  That's set forth in

24   detail in paragraph 6 which I referenced a few minutes

25   ago.  In paragraph 6 you're consenting to your removal

22

Proceedings

from the United States and you have executed a plea

agreement in support of judicial removal proceedings

dated January 16, 2025.  And in essence you're consenting

to your removal to El Salvador upon the completion of

your sentence in this case.

Let me turn next to the operation of the

sentencing guidelines.  As a general matter, sentences

are governed by the sentencing guidelines in determining

what a reasonable sentence is in a criminal case.

They're only advisory but they're an important

consideration in determining sentencing and Judge Azrack

will take them into account in determining what sentence

to give you.

Have you discussed the operation of the

sentencing guidelines with your attorneys?

THE DEFENDANT:  Yes.

THE COURT:  All right.  And I know what's set

forth in the plea agreement at paragraph 3 on page 3 is

an agreement between the government and you that you're

agreeing to a specific sentencing range of 480 to 780

months.  Is that right, Mr. Scotti?

MR. SCOTTI:  Yes, your Honor.

THE COURT:  All right.  Is that right, Mr.

Donaldson?

MR. DONALDSON:  Yes.

23

Proceedings

1          THE COURT:  All right.  And is that correct,

2    Mr. Sosa-Guevara?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  And I will note that

5    that agreement is conditioned in part as set forth

6    further on in paragraph 3 that if the co-defendants Jose

7    Moises Blanco, Oseas Gonzalez, Victor Lopez-Morales, Ever

8    Morales-Lopez, Kevin Torres, and Kevin Cuevas Del Cid, do

9    not all plead guilty on or before January 31, 2025, the

10   government in its discretion can elect to void this plea

11   agreement and proceed to trial.  And in the event the

12   government does that, the defendant retains --

13         THE INTERPRETER:  withdraw their guilty pleas,

14   the United States Attorney's Office has discretion to

15   elect to void this plea agreement and in the event that

16   the government elects to void the plea agreement, the

17   defendant retains his --

18         THE INTERPRETER:  I'm sorry, Judge.

19   Interpreter here.  Would you mind repeating the date?

20   Until when?

21         THE COURT:  Of course.  January 31, 2025.  And

22   if that all doesn't happen by that date, the government

23   has the discretion to void the plea agreement and proceed

24   to trial against you.  And in the event the government

25   does that, you have the right to withdraw your plea.  Is

24

Proceedings

1  that correct, Mr. Scotti?

2          MR. SCOTTI:  Yes, your Honor.

3          THE COURT:  All right.  Is that correct, Mr.

4  Donaldson?

5          MR. DONALDSON:  Yes.

6          THE COURT:  All right.  And is that correct and

7  do you understand that, Mr. Sosa-Guevara?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  And in addition, as I

10 discussed, this plea agreement sets forth an agreed-upon

11 sentencing range for you of 480 780 months.  However,

12 Judge Azrack has the discretion to reject this plea

13 agreement and if she does, as set forth in paragraph 3,

14 the government and you have the opportunity to withdraw

15 or vacate your plea today.  Is that correct, Mr. Scotti?

16         MR. SCOTTI:  Yes, your Honor.

17         THE COURT:  All right.  Is that correct, Mr.

18 Donaldson?

19         MR. DONALDSON:  Yes.

20         THE COURT:  All right.  Is that correct, Mr.

21 Sosa-Guevara, and do you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  All right.  Let me also note in

24 terms of your -- well, let me just stay on the

25 guidelines.  So just in terms of the way the sentencing

25

Proceedings

1   will operate, prior to your sentencing, which is

2   scheduled for July 9, 2025 at 10:30 a.m. before Judge

3   Azrack, Judge Azrack receive a pre-sentence report from

4   the probation department which will recommend a guideline

5   range.  Your counsel will have the opportunity to read

6   the pre-sentence report and challenge the facts in it as

7   reported by the probation department.

8          I do want to, even though I know this is

9   governed by a stipulated sentence between the parties

10  subject to Judge Azrack, does the government have an

11  estimate as to what the guidelines range would be for

12  this case?

13         MR. SCOTTI:  Yes, your Honor.  The estimated

14  guidelines range would be life in this case.

15         THE COURT:  All right.  Mr. Donaldson, do you

16  have a guidelines range in this case?

17         MR. DONALDSON:  I'm sorry, Judge?

18         THE COURT:  Do you have a -- what would your

19  guidelines range be in this case, your estimate?

20         MR. DONALDSON:  I agree with the government.

21         THE COURT:  All right.  Thank you.  Again,

22  that's the guidelines range but again, Mr. Sosa-Guevara,

23  as we've discussed as set forth in your agreement, the

24  parties have agreed upon a lowering of -- pardon me, 482

25  780 month to be determined by Judge Azrack in terms of

26

Proceedings

1    where within that to sentence you.

2              I think what's important for you to understand

3    is that Judge Azrack is not bound by this plea agreement.

4    If she doesn't accept it or what anyone estimates the

5    guidelines range to be and certainly in terms of where

6    you're sentenced within the agreed-upon range, you can't

7    know with any certainty what Judge Azrack is going to do.

8    Do you understand?

9              THE DEFENDANT:  Yes, I do.

10             THE COURT:  Has anyone made any promises to you

11   about where within that range Judge Azrack will sentence

12   you?

13             THE DEFENDANT:  No, nobody.

14             THE COURT:  All right.  Let me turn next to

15   another provision in your agreement with the government,

16   specifically paragraph 5 which starts on page 6 and

17   carries over to page seven.  My understanding is that you

18   were convicted in state court in February of 2020 on a

19   murder charge and were sentenced to a term of

20   imprisonment of 24 years to life in the state system.

21   Pursuant to paragraph 5, the government is going to

22   recommend to Judge Azrack that your sentence for the

23   crimes here in federal court are going to run

24   concurrently, run at the same time as the state case.  Is

25   that correct, Mr. Scotti?

27

Proceedings

1      MR. SCOTTI:  Yes, your Honor, that's correct.

2      THE COURT:  All right.  Is that correct, Mr.

3  Donaldson?

4      MR. DONALDSON:  Yes.

5      THE COURT:  All right.  And Mr. Sosa-Guevara,

6  is that correct and do you understand that?

7      THE DEFENDANT:  Yes.

8      THE COURT:  All right.  Let me turn to another

9  provision in your agreement with the government,

10  specifically paragraph 4 on page 4, in which you agree

11  not to file an appeal or otherwise challenge your

12  conviction or sentence in the event that Judge Azrack

13  imposes a term of imprisonment of 780 months or below.

14  Is that correct?  Do you understand that, Mr.

15  Sosa-Guevara?

16      THE DEFENDANT:  Yes.

17      THE COURT:  All right.  And did you agree with

18  that voluntarily?

19      THE DEFENDANT:  Yes.

20      THE COURT:  All right.  Thank you.  All right.

21  Is there anything else in the plea agreement that the

22  government wants me to review or specifically call out

23  for Mr. Sosa-Guevara, Mr. Scotti?

24      MR. SCOTTI:  No.  Thank you, your Honor.

25      THE COURT:  All right.  Thank you.  Mr.

28

Proceedings

Donaldson, anything else in the plea agreement that you

think I should specifically raise with your client?

MR. DONALDSON:  No.

THE COURT:  All right.  Thank you.  Mr.

Sosa-Guevara, do you have any questions you want to ask

me about the charge, or your rights, or anything else

related to this matter that might not be clear?

THE DEFENDANT:  No, I do not have any

questions.  All right.  Anything you want -- do you want

to speak to your attorneys or have any discussions with

them before we proceed further?

THE DEFENDANT:  Just one moment, one minute.

THE COURT:  Sure.  Go ahead.

(Pause in proceedings)

THE DEFENDANT:  Thank you very much.

THE COURT:  All right.  Are you ready to

proceed, Mr. Sosa-Guevara?

THE DEFENDANT:  Yes, I am.

THE COURT:  All right.  Mr. Donaldson, I know

you spoke to your client.  Are we ready to proceed?

MR. DONALDSON:  Yes.

THE COURT:  All right.  Thank you.  Mr.

Donaldson, do you know any reason why your client should

not enter a plea of guilty to this charge?

MR. DONALDSON:  I do not.

29

Proceedings

1      THE COURT:  Are you aware of any legal defense

2  to the charge?

3      MR. DONALDSON:  I am not.

4      THE COURT:  All right.  Thank you.  Mr.

5  Sosa-Guevara, are you satisfied with the representation

6  provided by your attorneys up until this point?

7      THE DEFENDANT:  Yes, I am.

8      THE COURT:  All right.  Are you ready to plead

9  at this time?

10      THE DEFENDANT:  Yes, I am.

11      THE COURT:  How do you plead to Count 1 in the

12  indictment charging you with racketeering guilty or not

13  guilty?

14      THE DEFENDANT:  Guilty.

15      THE COURT:  All right.  Are you making that

16  plea of guilty voluntarily and of your own free will?

17      THE DEFENDANT:  Yes.

18      THE COURT:  Has anyone threatened or forced or

19  pressured you to plead guilty?

20      THE DEFENDANT:  No, nobody.

21      THE COURT:  Other than the agreement, has

22  anyone made any promises to you that have caused you to

23  plead guilty?

24      THE DEFENDANT:  No.

25      THE COURT:  Has anyone promised you what

30

Proceedings

1    sentence you would receive from Judge Azrack if you do

2    plead guilty?

3              THE DEFENDANT:  No, nobody promised me

4    anything.

5              THE COURT:  All right.  So in terms of the

6    count that you're pleading guilty to in the indictment,

7    Count 1 charging you with racketeering, why don't you

8    tell me in your own words what you did in connection with

9    Count 1?

10             MR. DONALDSON:  Your Honor, with the Court's

11   permission and after speaking with the government and

12   with the government's consent, and after speaking to Mr.

13   Sosa as well as Mr. Holdridge about this particular part

14   of the proceeding and based upon Mr. Sosa's limited

15   education, it is our intent to read Mr. Sosa's

16   allocution.

17             To be clear, we have gone over this allocution

18   with Mr. Sosa several times in English and Spanish with

19   the aid of a Spanish-speaking interpreter several times.

20   He has had a copy of it in Spanish as well.  We have read

21   every single paragraph that we are prepared to read

22   today.  And with the Court's permission, we'd like to

23   read it on behalf of Mr. Sosa.  The Court is welcome to

24   ask Mr. Sosa questions after each paragraph that we read.

25             THE COURT:  Mr. Scotti, what's your position on

31

Proceedings

1    it?

2              MR. SCOTTI:  The government has no objection to

3    proceeding this way, your Honor.

4              THE COURT:  All right.  Mr. Sosa-Guevara, do

5    you understand what your attorney just said?

6              THE DEFENDANT:  Yes, I do understand.

7              THE COURT:  All right.  And my understanding is

8    that your attorney is going to read a statement.  Is that

9    right?

10              THE DEFENDANT:  Yes, I did give him permission

11    for that.

12              THE COURT:  All right.  And have you read that

13    statement?

14              THE DEFENDANT:  Yes, many times.

15              THE COURT:  All right.  And was that in English

16    or in Spanish?

17              THE DEFENDANT:  It was in both English and

18    Spanish.

19              THE COURT:  All right.  And did you have any

20    conversations with your attorneys about that statement?

21              THE DEFENDANT:  Yes, many.

22              THE COURT:  All right.  And is everything

23    that's contained in that statement truthful and accurate?

24              THE DEFENDANT:  Yes, it is correct, yes.

25              THE COURT:  All right.  And do you agree with

32

Proceedings

1  everything contained in that statement?

2          THE DEFENDANT:  Yes, I'm in agreement.

3          THE COURT:  All right.  Thank you.  Mr.

4  Donaldson, you can proceed.

5          MR. DONALDSON:  Thank you, your Honor.  I'll go

6  paragraph by paragraph and I'll start the paragraph with

7  the number for clarity.

8          Paragraph 1.  Sometime in 2014 I joined MS-13.

9  In 2016 I became the local leader the Hollywood clique in

10 Roosevelt and Freeport.  As leader, I authorized members

11 of my clique to commit acts of violence.

12         THE COURT:  Is that the end of paragraph 1?

13         MR. DONALDSON:  Yes.

14         THE COURT:  All right.  Mr. Sosa-Guevara, is

15 that -- do you agree with that statement?

16         THE DEFENDANT:  Yes, I am.

17         THE COURT:  All right.  Thank you.  You can

18 proceed.

19         MR. DONALDSON:  Paragraph 2.  The MS-13 has

20 members in New York, other states, El Salvador, Honduras,

21 Mexico, and other countries.  MS-13 members are involved

22 in criminal activities such as murders, attempted

23 murders, assaults, and drug dealing.  The gang has rules

24 that members are expected are expected to follow.

25         THE COURT:  Sir, do you agree with that

Transcriptions Plus II, Inc.

33

                              Proceedings

1   statement?

2              THE DEFENDANT:  Yes, I am.

3              THE COURT:  All right.  Thank you.  You can

4   proceed.

5              MR. DONALDSON:  Paragraph 3.  While I was a

6   member of the MS-13, I committed crimes with other MS-13

7   members on behalf of the gang.  As a leader, I also

8   authorized and directed members of my clique to kill

9   rival gang members including the murders I am about to

10  describe.  I committed these crimes to gain, increase,

11  and keep my status in the MS 13.

12             THE COURT:  Mr. Sosa-Guevara, do you agree with

13  that statement?

14             THE DEFENDANT:  Yes.

15             MR. DONALDSON:  Paragraph 4.  In April 2016 I

16  and other MS-13 members agreed to kill Samuel Martinez-

17  Sandoval and I directed members of my clique to

18  participate in the murder because we believed he was a

19  member of a rival gang.

20             THE COURT:  Mr. Sosa-Guevara do you agree with

21  that statement?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Okay.  You can proceed.

24             MR. DONALDSON:  On the evening of -- pardon me.

25             Paragraph 5.  On the evening of April 26, 2016

34

Proceedings

1  the victim was lured to a secluded area and Freeport

2  where he was attacked and killed with machetes and other

3  weapons.

4            THE COURT:  Do you agree with that statement?

5            THE DEFENDANT:  Yes.

6            THE COURT:  You can proceed.

7            MR. DONALDSON:  Paragraph 6.  On the night of

8  the murder, I drove several members of my clique to

9  participate.  I gave them machetes and dropped them off

10  by the wooded area where the victim was going to be

11  killed.  After the victim was dead, I arrived to confirm

12  it was successfully completed.

13            THE COURT:  Do you agree with that statement?

14            THE DEFENDANT:  Yes.

15            THE COURT:  You can proceed.

16            MR. DONALDSON:  Paragraph 7.  In May of 2016 I

17  and other MS-13 members agreed to kill Kerin Pineda

18  because we believed he was a member of a rival gang.

19            THE COURT:  Do you agree with that statement?

20            THE DEFENDANT:  Yes.

21            THE COURT:  You can proceed.

22            MR. DONALDSON:  Paragraph 8.  During the

23  planning of the murder, I authorized other members of my

24  clique to participate in the murder.

25            THE COURT:  Mr. Sosa-Guevara do you agree with

35

Proceedings

1    that statement?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Okay.  Go ahead.

4              MR. DONALDSON:  Paragraph 9.  On May 21, 2016

5    the victim was lured to a secluded area in Freeport where

6    he was attacked by other members of the gang with

7    machetes and killed.  During the murder, I was in contact

8    with the other gang members and was driving around the

9    area where they killed the victim looking out for police.

10             THE COURT:  Do you agree with that statement?

11             THE DEFENDANT:  Yes.

12             THE COURT:  All right.  Go ahead.

13             MR. DONALDSON:  Paragraph 10.  In August and

14   September of 2016 I authorized the murder of Jose

15   Amaya-Leonor because he was suspected of being a member

16   of a rival gang.

17             THE COURT:  Do you agree with that statement?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Go ahead.

20             MR. DONALDSON:  On the night of September 4,

21   2016 -- pardon me.

22             Paragraph 11.  On the night of September 4,

23   2016 I directed other members of the gang to lure the

24   victim to the Roosevelt Preserve in Roosevelt and kill

25   him.

36

Proceedings

1          THE COURT:  Do you agree with that statement?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  Go ahead.

4          MR. DONALDSON:  Paragraph 12.  The other MS-13

5   members attacked and killed the victim with a machete and

6   then buried the body.

7          THE COURT:  Do you agree with that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  Go ahead.

10         MR. DONALDSON:  Paragraph 13.  During the

11  murder, I was in communication with one of the

12  participants and was instructing him what to do.

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you agree with that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  All right.  Go ahead.

17         MR. DONALDSON:  Paragraph 14.  In October 2016

18  I authorized the murder of Carlos Ventura-Zelaya because

19  he was suspected of being a rival gang member.

20         THE COURT:  Do you agree with that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  All right.  Proceed.

23         MR. DONALDSON:  Paragraph 15.  On October 14,

24  2016 I was driving in Roosevelt and conducting

25  surveillance of the victim in my car while communicating

37

Proceedings

1    with gang members in another car who were armed with guns

2    and tasked with killing the victim.  After they shot the

3    victim, we all fled the area.  We later learned victim

4    had died.

5            THE COURT:  Do you agree with that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  All right.  Next.

8            MR. DONALDSON:  Paragraph 16.  I authorized the

9    MS-13 members to use guns that belonged to the clique to

10   kill the victim.

11           THE COURT:  Do you agree with that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Please proceed.

14           MR. DONALDSON:  Paragraph 17.  In July of 2017

15   I authorized the murder of Angel Soler because he was

16   suspected of being a member of a rival gang.

17           THE COURT:  Do you agree with that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  All right.  Next, please.

20           MR. DONALDSON:  Paragraph 18.  On July 21,

21   2017, other MS-13 members lured the victim to a park in

22   Roosevelt where they attacked and killed him with

23   machetes and other weapons.  During the murder, I was

24   driving in the area where the victim was killed looking

25   out for police.  After the victim was killed, I drove the

38

Proceedings

1    participants away from the area.

2              THE COURT:  Do you agree with that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Thank you.  Next?

5              MR. DONALDSON:  Paragraph 19.  In August 2017 I

6    was in Maryland and agreed with other MS-13 members there

7    to kill David Rivera because we believed he was a member

8    of a rival gang.  As part of the plan I authorized

9    another member of my clique to participate in the murder.

10             THE COURT:  Do you agree with that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Okay.

13             MR. DONALDSON:  Paragraph 20.  On August 29,

14   2017 the other MS-13 members abducted the victim and took

15   him to a secluded area in a park in Maryland.  I drove

16   the member of my clique to the park and dropped him off

17   so he could participate in the murder.

18             THE COURT:  Do you agree with that?

19             THE DEFENDANT:  Yes.

20             MR. DONALDSON:  During the murder I stayed in

21   my car and looked out --

22             THE COURT:  Which paragraph?  Is this paragraph

23   21?

24             MR. DONALDSON:  My apologies.

25             THE COURT:  It's okay.

39

Proceedings

1          MR. DONALDSON:  Paragraph 21.

2          THE COURT:  Go ahead.

3          MR. DONALDSON:  During the murder I stayed in

4   my car and looked out for police in the area surrounding

5   the park.  After the victim was killed, I drove the

6   member of my clique away from the location.

7          THE COURT:  Do you agree with that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Thank you.

10         MR. DONALDSON:  Paragraph 22.  In August 2017

11  there was an MS-13 member who had violated the gang's

12  rules and it was decided that he would be given a beating

13  as punishment.  I directed other MS members to take the

14  victim to a secluded location and beat him with weapons

15  for his violations.  While on the way to get the victim

16  in Suffolk County, the other gang members were stopped by

17  police and the attack never happened.

18         THE COURT:  Do you agree with that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  All right.

21         MR. DONALDSON:  Paragraph 23.  From early 2016

22  through early 2017 I directed other members of my clique

23  to sell marijuana.  The gang members would return the

24  money made from drug dealing back to the clique and we

25  would use the money to buy more drugs, to buy weapons and

Transcriptions Plus II, Inc.

Proceedings

1  ammunition, and to wire money to clique leaders in El

2  Salvador.

3          THE COURT:  Do you agree with that?

4          THE DEFENDANT:  Yes.

5          MR. DONALDSON:  Paragraph 24.  I did these

6  things knowingly and intentionally and unlawfully.

7          THE COURT:  Do you agree with that?

8          THE DEFENDANT:  Yes.

9          MR. DONALDSON:  Paragraph 25.  I understood

10  what I was doing at the time and I knew it was wrong and

11  against the law.

12          THE COURT:  Do you agree with that?

13          THE DEFENDANT:  Yes.

14          MR. DONALDSON:  One more thing, your Honor,

15  regarding jurisdiction.  When we mentioned locations of

16  Freeport, we were talking about Long Island located in

17  the Eastern District of New York.

18          THE COURT:  Is that correct, Mr. Sosa-Guevara?

19          THE DEFENDANT:  Yes.

20          THE COURT:  All right.  And also, Mr.

21  Sosa-Guevara, in terms of the distribution of marijuana,

22  did that also happen on Long Island?

23          THE DEFENDANT:  Yes.

24          THE COURT:  All right.  Thank you.  Mr. Scotti,

25  any follow-up?

41

Proceedings

1          MR. SCOTTI:  No.  Thank you, your Honor.

2          THE COURT:  All right.  Mr. Scotti, if the

3    defendant chose not to plead guilty today, what is the

4    government's proof that would support these charges?

5          MR. SCOTTI:  Your Honor, if the case went to

6    trial, the government would have proved the defendant's

7    guilt beyond a reasonable doubt through various sources

8    of evidence.  That would include testimony from a number

9    of different categories of witnesses starting with

10   cooperating defendants who were former members of the

11   MS-13 who admitted to their participation in crimes

12   committed by the gang and individuals who also pleaded

13   guilty to those crimes.  They would detail the existence

14   and operations of the MS-13 as an international criminal

15   organization, that the --

16         THE INTERPRETER:  I'm sorry.  Interpreter here.

17   Just a little slower.  Just one sentence before.

18         MR. SCOTTI:  Sure.  I'm sorry.  Let me just say

19   that sentence again.  They would detail the existence and

20   operations of the MS-13 gang as an international criminal

21   organization, that the MS-13 gang has leaders and rules.

22   They would also testify to the defendant's membership in

23   the Hollywood clique of the MS-13 and to his status as a

24   leader of the clique.

25         They would establish that the racketeering

42

Proceedings

1  activities of the MS-13 gang affect interstate and

2  foreign commerce.  They would testify regarding the

3  defendant's participation in all of the racketeering acts

4  both charged and the uncharged racketeering acts the

5  defendant admitted to today, specifically that the

6  defendant agreed with the other MS-13 members to commit

7  these crimes.  And the cooperators would provide to a

8  jury specific details of the defendant's role in each of

9  the crimes.  They would also testify as to the

10  approximate date and locations of the crimes in the

11  Eastern District of New York.

12          We would also call law enforcement witnesses

13  who responded to or investigated the various murders and

14  other crimes admitted to today and charged in the

15  superseding indictment.  Those witnesses would testify as

16  to their observations, the evidence they recovered.  And

17  some of the evidence recovered during the course of the

18  investigation by law enforcement would be admitted into

19  evidence at trial.

20          We would also call medical examiners who

21  performed the autopsies of the victims who were murdered.

22  They would provide expert testimony as to the manner and

23  cause of the victims' deaths which would be consistent

24  with other evidence in this case including the cooperator

25  testimony of how the victims were killed.

43

Proceedings

1          We would also admit video surveillance that was
2    relevant to certain crimes that were charged as well as
3    evidence obtained from lawfully obtained wiretap warrants
4    of telephone conversations and text message chats between
5    MS-13 members including this defendant and several of his
6    co-conspirators.

7          And the totality of the evidence, your Honor,
8    would prove the elements of each of the charged
9    racketeering acts and of the count of racketeering beyond
10   a reasonable doubt as well as establish that the crimes
11   happened on or around the dates that are alleged in the
12   superseding indictment and in the Eastern District of New
13   York.

14         And your Honor, having provided the recitation
15   of the evidence, we would just ask for the Court to
16   confirm with the defendant that he is not disputing and
17   stipulates that if the case went to trial the government
18   would be able to prove that the MS-13 does affect, the
19   activities of the MS-13 do affect interstate and foreign
20   commerce.

21              THE COURT:  Mr. Donaldson?

22              MR. DONALDSON:  Yes, we agree with that.

23              THE COURT:  All right.  Mr. Sosa-Guevara, do

24   you understand that?

25              THE DEFENDANT:  Yes, I do understand that.

44

Proceedings

1           THE COURT:  And do you agree to that?

2           THE DEFENDANT:  Yes.

3           THE COURT:  All right.  Mr. Donaldson, do you

4    find your client's elocution to be factually sufficient?

5           MR. DONALDSON:  Yes.

6           THE COURT:  Mr. Scotti, anything further needed

7    for purposes of Rule 11?

8           MR. SCOTTI:  Nothing from the government, your

9    Honor.

10          THE COURT:  Thank you.

11          MR. DONALDSON:  Can I have one second please,

12   Judge?

13          THE COURT:  Of course.  I was going to come to

14   you next.

15          MR. DONALDSON:  I appreciate that.  Thank you.

16          THE COURT:  Of course.

17                    (Pause in proceedings)

18          MR. DONALDSON:  Your Honor, there's just one

19   other matter.  During the course of questions to my

20   client, to our client, Mr. Sosa-Guevara, regarding the

21   plea agreement, we discussed the judicial removal

22   regarding going back to El Salvador after the sentence is

23   complete.  For the record, we do, or Mr. Sosa did execute

24   what's called a defendant's plea statement in support of

25   judicial removal.  For the record, that is a four-page

Proceedings

1   document with four paragraphs.  We have discussed that

2   myself and Mr. Holdridge has discussed this with Mr.

3   Sosa-Guevara.  We have used a Spanish speaking

4   interpreter to discuss it with Mr. Sosa-Guevara.  And I

5   believe we've also provided it in Spanish as well.  He's

6   reviewed it before signing it.  We're going to hand this

7   over to the government so they can keep it in their

8   possession and they will provide it to Judge Azrack at

9   the time when it's appropriate.

10          THE COURT:  All right.  Mr. Scotti?

11          MR. SCOTTI:  Yes, your Honor, that's

12   acceptable.

13          THE COURT:  Okay.  All right.  Thank you, Mr.

14   Donaldson.

15          All right.  Other than that, Mr. Donaldson,

16   anything further needed for purposes of Rule 11?

17          MR. DONALDSON:  No, your Honor.  Thank you very

18   much for the time.

19          THE COURT:  All right.  Based upon the

20   information that I've heard today, I find that Mr.

21   Sosa-Guevara is acting voluntarily and that he fully

22   understands the charges against him, his rights, and the

23   consequences of his plea and that there are factual bases

24   for the plea.  I find that that plea did not result from

25   force, threats, or undisclosed promises.  And it's my

46

Proceedings

1    recommendation to Judge Azrack that she accept his plea

2    to Count 1, the racketeering charge.

3            I have been informed by Judge Azrack's chambers

4    that sentencing is scheduled for July 9, 2025 at 10:30

5    a.m. before Judge Azrack.

6            Is there anything else that we need to address

7    today, Mr. Scotti?

8            MR. SCOTTI:  No.  Thank you, your Honor.

9            THE COURT:  All right.  Thank you.  Mr.

10   Donaldson, Mr. Holdridge, anything else you want to

11   address today?

12           MR. HOLDRIDGE:  No, your Honor.

13           MR. DONALDSON:  No, your Honor.  I just want to

14   thank the Court for its attention and we appreciate the

15   time.

16           THE COURT:  Absolutely.  All right.  Everyone

17   have a good afternoon and we're adjourned.  Thank you.

18           MR. SCOTTI:  Thank you, Judge.

19                   (Matter concluded)

20                        -oOo-

21

22

23

24

25

47

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **23rd** day of **January**, 2025.

_Mary Greco_

Transcriptions Plus II, Inc.